Good morning. May it please the Court. I'm Karen Landau. I represent the appellant. And the question before the Court is whether the – well, it's twofold – whether the guilty plea is invalid, such that the – this Court should vacate the conviction and remand to allow the defendant to re-plead or for a jury trial, should he desire, and whether the district court views its discretion in denying the motion to withdraw the plea. They're closely related. If you win, does he face a harsher sentence? He may. That's up to the government. Yes, he may. I could – I mean, that's a simple answer. Does he know that? Your Honor, we have had communications. Those communications are privileged. I'm not in the habit of – I mean, I argue before this Court many times, so I will leave it at that. Sure. It's always interesting, though, when somebody says, please allow me to go back to the district court where I can double my sentence. Well, he knows it now. Well, Your Honor, I mean, ultimately these decisions are certain decisions, as you know, and I know that belong to the client. There are certain decisions that belong to the attorney. And I think the decision whether a defendant chooses to try to vacate his plea belongs to the client. Okay. Okay. I mean, there is – there is – I mean, there is a third issue, which is I think the government concedes that regardless, he is entitled to an amylene remand. Right. Because the sentence was imposed under the mandatory. I think everybody understands that. Yes. Everybody understands that. So – but yes, yes, he – yes, there is – there is certainly a possibility. Whether that will happen, I do not know. I mean, interestingly in this case, the plea agreement did not promise – he – there was no 851 filed. The plea agreement did not promise that, however. So that's – that's the – that's the situation. You know, if the court doesn't – I mean, I have a few remarks, but essentially this case is in my view virtually indistinguishable or actually indistinguishable from Villa-Lobos. The – this court has held that when a district court takes a guilty plea in a drug case and the defendant is pleading guilty to a quantity that increases the statutory maximum and may – and results in a mandatory minimum as well because those two elements go along together, the court has to advise the defendant that the government bears the burden of proving quantity beyond a reasonable doubt. That didn't happen here. Yeah, but he – he knew it. I'm not sure that he did know it. He really – He kind of says that he understood it, though. No, he says – In his own language, he says, I knew at the time of the plea. But at the plea – at the time of the plea, he was obviously confused. He says – He said here, I thought I could have the drug amount proven beyond a reasonable doubt. Yeah. Your Honor, at the time of the plea. And she tells him no. She says, no, you don't have that option. You have to – Oh, wait. Who told him no? The judge told him that. At the plea? Yes. The judge says – this is what – if we go to ER – I believe it's ER 40. ER what? ER 40. Page 23 of the change of plea hearing. But it's – it's excerpt of Record 40. It says, Your Honor, I have a question. By pleading guilty to count 1, which is the 846 count – Well, will there still be a hearing to establish a factual basis? Establish a defense level, a drug amount. And the court says, well, I'm going to ask Mr. Misaki, I'm the U.S. attorney, to make an offer of proof. And that's to state for the record what the government believes it will be able to prove against you. And then I'll ask you whether you agree or not. If you don't agree with what he says, you'll be able to tell me what you disagree with or object to. If you do agree, then that will be a factual basis. Then the U.S. attorney – The court. Mr. Misaki, does your proposed factual basis include an amount? An amount. That's right. And my recollection of the plea agreement is that it does. Yes, it does. In the plea agreement, it did. It did. It did. It said – that's right. They required him to be – And it also says proof has to be beyond a reasonable doubt. Reasonable doubt. Yes. But in Villa-Lobos – well, you're right. In Villa-Lobos, that – there was that difference. In Villa-Lobos, there was no – Big difference. But actually, I read the plea – the plea agreement, and I did not find – I mean, maybe I missed this. I reread it this morning, and I didn't find a reference to beyond a reasonable doubt. Well, the other – No. The other thing is this is a plain air standard of review, is it not? Well, but that's not – that – we disagree with – I disagree with that, respectfully, Your Honor. Because – Where was the objection? There was an objection as in Villa-Lobos. The defendant here moved to withdraw his guilty plea. In fact, the very day after he was guilty. And where did he say, you didn't advise me of the right to have my – He doesn't say that. But he – he clearly – it's clearly an issue – what's his issue is clearly the drug quantity. Well, wait a minute. Can we hear that word 800,000 million times clearly? But, Your Honor, if you're – You're asking us to construe it as an objection. He didn't clearly say that. He said something else, and you want us to construe that in his favor. It was apparent that his beef was the drug quantity determination all along. Right. But it wasn't that you didn't tell me that I had a right to have it proved. Correct. That precise thing. That's the problem. So it's not as clear as you would like it to be. You're right. It's not. It's not as ideal. Obviously, I didn't represent him below. But, Your Honor – Cinderella lives. There's always a glass slipper. And if I can just get my foot into it. Your Honor, under Bank Salazar, I mean, that's where we go. I mean, I think if you look at Bank Salazar, this Court held that an objection, an Apprendi or a Blakeley objection, preserved the non – in other words, a Sixth Amendment objection at sentencing, preserved the non-constitutional objection to the application of the mandatory guidelines. This is a comparable situation. You're right, though. I have to concede that in the record, he did not say you didn't advise me. That's correct. But – so I would still argue that harmless error applies. If plain error does apply, again, the fundamental point under Dominguez-Benitez is whether there's a reasonable probability that he wouldn't have pleaded guilty if he'd been properly advised, in this case, that the government had the burden to prove drug quantity beyond a reasonable doubt. And here he gives every evidence that he would not have pleaded guilty, at least not to drug quantity. I mean, I think that's the key. He might have still pleaded guilty to the offense and reserved the right to contest drug quantity as is his right, either by the judge beyond a reasonable doubt or by a jury. And here, what did he do? He moved to withdraw his guilty plea in a timely manner. The next thing he did was he objected at sentencing, despite the fact that his attorney didn't make the sentencing objection to drug quantity. It seems to have been triggered in some measure by the disappearance off the witness list of Ms. O'Neill. Well, I think that that's – I mean, that came up at the hearing, but if you look at his own papers that he submitted and his affidavit that he submitted in support of the motion to withdraw a guilty plea, that is – those documents, again – I mean, he says a lot of things. He's a pro se. He's not a lawyer, and his lawyer, in all honesty, didn't make the best argument that he could have for him. But what does he keep going back to? Drug quantity, drug quantity, drug quantity. I think that's what you can reasonably expect for a pro se, and his pleadings should be construed liberally, although he is – I mean, he is represented by counsel. Honestly, counsel here had his own – probably had his own opinion and was – I don't know. I wasn't there, so I can't say beyond that. Counsel thought it was a good deal for the client. That's clear. Clear, clearly, clearly, clearly. And that ultimately, of course, is the defendant's decision to make with the effective advice of counsel. But it's still the defendant's decision. Just briefly on the second argument, even if the court finds that this is not – that the plea is not invalid, I think there still is a fair and just reason to withdraw the guilty plea. And what is it? The fair and just reason is that when you couple his timely request to withdraw the plea and even the district court conceded it was timely when she was apprised of the correct facts, and his consistent – I mean, I agree that the defendant doesn't get to withdraw his plea on a whim, but it's clear that here he – I'm sorry, again, I used that word. I shouldn't have. But it's here he wanted to withdraw his plea. He was troubled by the issue of quantity. He was reluctant to admit quantity. And plus there's this issue of the fact that there was no – there was – he wasn't advised that the government bore the burden of proving quantity beyond a reasonable doubt. And I'm sorry, but district court obviously went back and reviewed the plea colloquy, and this was something that she did not mention, was not brought up. But it's there. Well, he seems to think that unless you catch me red-handed with my hands full of this amount of stuff, you can't convict me for that amount of stuff. Well, Your Honor, many defendants have that problem. But that's not right. Of course it's not right. Of course it's not right, but what is? So you want us to honor his continued belief, notwithstanding what everybody's told him over and over again, that he has to be caught red-handed? I don't know what the evidence is in this case, because I obviously did not represent him below. I don't know how much evidence of drug quantity there actually is. It may be that the government can't make that 50 grams, the statutory triggering quantity, which is 50 grams of crack cocaine. I don't know, but this is his decision. Believe me, I am not anxious for him to get a longer sentence, but it is ultimately his decision. All right, thanks. All right. I'll say my. Good morning, and may it please the Court. Byung Soo Kim for the United States. The standard of review with respect to the first issue presented in this appeal is plain error review. The closest analog in terms of that issue is the Vaughn case in the Supreme Court, in which a defendant asserted on appeal that there had been a Rule 11 error. Subsequently moved to withdraw his plea, but didn't assert the Rule 11 error as the basis for that motion, and the Supreme Court held or strongly suggested that the standard of review that should be applied was plain error review, not harmless error review. The Villalobos case is different from the Vaughn case, in that in that case the defendant did not raise the issue properly in the motion to withdraw. Were you the prosecutor? No, I was not the prosecutor, Your Honor, in the district court. Who was? Your Honor, the prosecutor in the district court was AUSA Craig Masakian. Has he gone from the office? No, Your Honor. He's sentencing after the minority opinion. Why are these little funny mistakes made by the prosecutor? I'm sorry, Your Honor. How can you let this get by? I mean, at that time everybody knew that in taking a plea you had to tell somebody that the government had to prove the quantity beyond a reasonable doubt. It didn't happen here. Your Honor, I would respectfully disagree. We've been discussing the substantial. That's really part of the prosecutor's job. Well, you know, the judge has got to go through this whole colloquy. It takes a lot of time. I'm sure the judge had a checklist and perhaps missed something, and it's one of the duties of the prosecutor to call any deficiency to the judge's attention. At least they do it all the time. They used to do it to me all the time. Plus prosecutors write up these plea agreements. In fact, Your Honors, neither Rule 11 nor this court's precedents require at the change of plea hearing that the district court advise the defendant as to the government's burden of proof. The Villalobos cases – What did we say in Buckland? Your Honor, we did not say – the court did not. In Minori and Villalobos, Your Honor, the issue was whether the defendant had been advised that drug quantity was an element of the offense. And in both of those cases, this court held that drug quantity after a prende was the functional equivalent of an element and therefore had to be advised – the defendant had to be advised of that fact. Now, the only time – Not that the government had to prove that beyond a reasonable doubt. That's correct, Your Honor, no more than the government has to prove that the defendant has to be advised that the government has to prove any other element other than drug quantity beyond a reasonable doubt. The issue in Villalobos and Minori was whether it was an element of the offense in the first place. In this case, there's no question that the defendant was advised of that fact, both in the plea agreement and the plea colloquy. The only issue that the defendant is raising in this appeal is whether this court should go beyond its current precedents and hold that not with respect only to drug quantity, but with respect to any element. And in any crime, the defendant also has to be advised as to the government's burden. But there's no case that says that when the court takes a plea, the court must advise the defendant that in giving up his right to go to trial, he's also giving up his right to have the government prove their case beyond a reasonable doubt. Correct, Your Honor. There is language to that effect in the Villalobos case, but that discussion takes place in the context of whether the – Isn't that what all the district judges do when they take a plea? Your Honor, frankly – The elements of the offense, the government has the burden of proving each and every element, you know, beyond a reasonable doubt. Well, I would agree. In my experience, Your Honor, and I've been with the office over four years, the first part of what Your Honor was saying is my experience, is in my experience true, that the court, the district court will ask what the government's burden is in proving this crime. But whether the district court also says that the government's burden is proof beyond a reasonable doubt, in my experience does not happen in all cases that I've been a witness to. And, Your Honor, in the Ruiz case by the Supreme Court, the court made clear that there are lots of facts and information and laws and principles that a defendant does not have to be advised of during the Rule 11 colloquy. Yeah, but it's a pretty important one. It is an important one, Your Honor, and we haven't fully discussed the substantial rights requirement under plain error review. In fact, in excerpts of Record 9, which is the plea agreement, the defendant was advised of the government's burden of proof. That is that the government had to prove its case beyond a reasonable doubt. Is that in this case? That's in this case, Your Honor. Which paragraph says that? Because I was just looking at that, and I thought that I had seen it, but I couldn't find it. Excerpts of Record 9, Your Honor. ER 00000009. Okay, let me see. 00000009. 10d. I think you missed a zero, Your Honor. Yeah, probably not. 10. Paragraph 10. 10d. 10d, that's correct. So the defendant was advised of the plea agreement. Yeah, there it is. Okay, you're right. I knew I'd seen it. And, as Judge Trott pointed out, in the motion to withdraw that was filed a little over a month after the change of plea hearing, the defendant essentially recognized what the government's burden was. His qualm, Your Honor, was not with respect to the government's burden of proof, but rather with respect to whether he should be entitled to have a separate hearing. Of course, he raised that very same issue at the Rule 11 hearing. It was addressed fully by the district court at that time. And at the conclusion of their exchange, the defendant said, I understand. I agree to the factual basis stated by the Assistant U.S. Attorney. And at Excerpt of Record 46, Your Honor, the defendant is specifically asked by the district court if he understands that there will be no further proceedings after the Rule 11 hearing other than the sentencing. Again, the district court's addressing the very issue that he had presented to the district court, and the defendant responds that he understands. But, Your Honor, before we even get to the substantial rights prong, or the substantially or seriously affects the fairness and integrity of the proceedings prong, again, we would submit that this court has never held that the district court must, either with respect to drug quantity or any other element or offense, specifically advise the defendant about the government's burden of proof. Well, should we do that? No, Your Honor. Why not? I mean, it seems like defendants need to know that. Well, Your Honor. I mean, my years in the district court and as a state court judge, I mean, I think I did that most of the time. Maybe I didn't. You've got me wondering whether I did it every time. But I thought that I did. Well, that might go, Your Honor, to whether if there was error, whether it was plain error. But putting that issue aside, Your Honor, I don't think that the court should go that far and extend the language, the stray language in Villalobos, into a holding. Well, it starts to get a little repetitive. I mean, there are five elements. You have to be proved guilty of the first element, behind a reasonable doubt, the second element, behind a reasonable doubt, the third element, behind a reasonable doubt. Here he was told under the nature of the offense exactly what the crime was. It involved distribute more than 50 grams of a mixture of substance. Then a couple pages later he says, you know, you might be right about Menorah because Menorah has a little bit of an angle to it that I missed when I first read it, and that is that what they talk about in Menorah is before accepting a guilty plea, the district court must advise the defendant that the government would have to prove to the jury behind a reasonable doubt any quantity of drugs, here's the kicker, that would expose the defendant to a higher statutory maximum sentence. That's the kicker in Menorah. And then footnote one, though, says although we address only drug quantity, we recognize that the logic of our holding extends to any fact that exposes the defendant to a higher statutory maximum. And thus under apprendee must be proved to a jury behind a reasonable doubt. So Menorah doesn't say in all cases you have to segregate out the quantity and attach to it a burden of proof beyond a reasonable doubt. You're right, I guess. Thank you, Your Honor, and I think that if you were to extend I say that so Karen can come and tell me why I'm wrong. And I think that if you were to extend the appellant's argument far enough, there's no reason that this newfangled requirement shouldn't be imposed in all cases. And that's just not this Court's case law. The Villalobos case, Your Honor, does contain Why shouldn't it be imposed in all cases? Well, Your Honor, I would start with the language of Rule 11. The specific requirement that we're talking about is the advisement as to the nature of the charges. It's important, isn't it? I would agree, Your Honor. It is an important principle, but there are Why shouldn't the defendant be told about it by the judge? Well, Your Honor, I would start with Rule 11. That's what we're talking about. All this other language that goes on and on and on and on for pages. Boilerplate. Boilerplate, yeah. Well, it may be boilerplate. Why not just do that? Boilerplate. Because, Your Honor, as the Supreme Court explained in the Ruiz case, with respect to exculpatory material, and notably, there wasn't even a question in the Ruiz case in the Supreme Court that the defendant had any kind of right to be informed of his right to obtain Brady exculpatory material. There are, as the Ruiz case illustrates, any number of important constitutional rights, questions about the nature of the defendant's right to be present during the proceedings, questions about how the jury selection process operates. There are any number of rights that are, we would submit, as important as the right with respect to the government's burden of proof. No, because when you're dealing with this quantity, the ante is up. You get a much tougher sentence. That's absolutely correct, Your Honor. But, again, the defendant in this case was advised that the government had to prove drug quantity as one of the elements, just as the government had to. That was in the plea agreement, though. Rule 11 deals with the judge's interaction with the defendant. Well, Your Honor, at the plea colloquy, the Rule 11 hearing, the defendant was also advised by the government. By the government. Yes, about the government's, the fact that drug quantity was an element of the offense. But, you know, in Rule 11b1g, no, wait a minute. Yes, g, the nature of each charge of which the defendant is pleading. We've interpreted that, or at least in practice we interpret that as requiring the judge to explain to the defendant the elements of each charge. The charge that's in the indictment. Correct. So, I mean, I don't know, it doesn't say that. It just says the nature of, all Rule 11 requires is the nature of the charge. Yet we have given that some meaning. We have, Your Honor. I don't know why it doesn't also follow that, you know, when the judge explains that, that the judge should make sure that the defendant understands that the government's burden is beyond a reasonable doubt. I think Your Honor's point is a good one, and there might be a line-drawing issue here. I think that, yes, the court's case law does go, someone, or in expatiating the phrase nature of the charges, has elaborated on that phrase. But we would submit that to superimpose what we would consider a completely different requirement or additional requirement regarding the government's burden of proof would really stretch the plain meaning of that phrase. And, Your Honor, it's just not required. How would it stretch the plain meaning of that phrase? Well, because the nature of the charges easily connotes what the elements of the offense are. It's easy to see how those two concepts. Because drug quantity is one of the elements. It is, Your Honor, just as it's an element that the defendant have entered into the conspiracy knowing of its goals and purpose. Our point is that it's an important element, Your Honor, but it's, at the end of the day, especially now that we're several years past Apprendi, no more important than any other element of the crime that the defendant pled guilty to. When Judge Perkinson and I started in this business, the way you took a plea was to say, Joe Jones, is that your true name? Right. How do you plead? I mean, that's about what it was. A little more than that. A teeny bit more, but not a whole lot. I believe Justice Souter called those. Now you go through this giant kabuki dance with all of these things. Justice Souter, I believe, in one of the recent Supreme Court decisions, referred to those days as being somewhat primitive. But in any event, we have come a considerable way. Recently, Your Honor, Rule 11. He should know he lives out in the woods, doesn't he? He would know, Your Honor. But in all seriousness, Rule 11 has been amended over the years. It's much more elaborate than it once was, and I think that the Court should hew to the language of Rule 11. Congress knew what it was doing when it amended Rule 11, and Rule 11 contains numerous specific requirements that are placed on the district court. Congress knew what it did when it amended Rule 11. What proof has he got of that? Simply the language. Talking about primitives. I'll strike that last argument, Your Honor. But I do think that the Rule 11 colloquy that's required by the plain language of Rule 11 is extensive, and there's no reason to go beyond it. If I could just proceed briefly to the motion to withdraw issue. The issue that seemed to take up the most time in the district court was the issue involving Lisa O'Neill, and I think that the district court resolved that issue fairly, and it doesn't appear that the appellant is raising that argument on appeal. The argument that is being raised is not the Rule 11 argument, because that argument wasn't presented in the motion to withdraw, but rather the defendant's either change of mind or confusion over whether there would be a subsequent hearing where the government would have to prove drug quantity. And, again, government's, excuse me, the excerpts of Record 46 soundly refutes that argument. The defendant was asked directly by the district court if he understood there would be no further proceedings. He said yes. It's true that at the Rule 11 hearing, the defendant was somewhat ambivalent about the fact that he would be accepting the government's factual basis and that there would be no further hearing. But after expressing that ambivalence, the district court directly addressed the defendant, explained to him how things were going to work if he accepted the government's factual basis, and then after having been so advised, the defendant did accept that factual basis. And he came back with the exact same reason that he was relying on at the Rule 11 hearing. That's right, Your Honor. And that's why it's not fair and just, because it was already plowed over by the district court. That's right, Your Honor, and that's why there was no abuse of discretion in the court's denial of that motion. Unless there are any other questions? Call Lisa O'Neill or whatever her name was. Nail it down. Thank you, Your Honor. Or have a U.S. attorney that's alert. Thank you. Okay. So the government has argued that essentially Rule 11 should be limited to its precise terms and that the Ninth Circuit has never held that the court is required to instruct the defendant that the government bears the burden of proving quantity beyond a reasonable doubt. Well, I do disagree with that proposition. The court so held in Menor and the court clearly so held in Villalobos. No, but in both of those cases, there's a little kicker there that they talk about in footnote one. I don't have footnote one before me, Your Honor, but I heard you read it and... It didn't say in all cases. It just said in cases where this fact is going to subject somebody to exposure greater than the statutory maximum. And that is exactly, but see, that's exactly the situation here is that this, in all drug cases, quantity, at least to the statutory triggering amount, does subject the defendant to a higher statutory maximum as you, as was recognized in Velasco-Eridia and before then. But Velasco-Eridia laid that to rest. So, I mean, I think it's clear that, and as far as, you know, that, oh, the government is going to have to, you know, the court will have to go through all these other elements and there's all these other things. Yes, there are a lot of elements of the offense, but drug quantity is the one that increases the statutory maximum. And, of course, you know, courts have been interpreting Rule 11 at least since 1969, since the McCarthy decision, and Rule 11 has been amended many times. But even before Rule 11 was amended, the Supreme Court said, okay, well, this is, you know, this is what you have to do to take a viable guilty plea. And this, you know, I think what the Ninth Circuit has done is in drug cases the Ninth Circuit has said this is what is required. So, I mean, here we do have a plain and obvious error. This plea was taken a couple of years after Minort was taken after Villalobos. But even if that's true, I mean, he says in his own language, at the time of the plea, he knew the government had to prove this beyond a reasonable doubt. So what's the, when you cut away all the underbrush, what's the real harm? I think the harm is I don't think he really, I think when you read the whole thing in context, that's really, I think that when you read that in context with what happened at the plea, he, I mean, there are a lot of permutations to this process. There are a lot of possibilities. You know, one possibility is you plead open without a plea agreement, and the government has to prove quantity either to a jury or to a judge beyond a reasonable doubt. The other possibility is you take the plea agreement and you have to admit, because of course the government can make that a condition. But I think when you read the whole thing in context and you read the colloquy and you read what the judge told him, I don't really think he did understand that. I think that the judge's advice to him, she never really acknowledged the burden of proof. She never acknowledged it at all at the colloquy. It never came up. It's mentioned in the plea agreement, but that's not really been held to be enough. And when you read the whole thing in context, I don't think he did know. He's not a lawyer. I doubt that he's even, he didn't go to college. This is not somebody who's really sophisticated, and frankly from his lawyer's pleadings, I don't have a lot of confidence that his lawyer set out the, you know, said, well, you can do this or you can do that. I mean, I don't know. But that's, you know, given the pleadings, I don't have a lot of confidence in that. And, you know, at the plea colloquy itself, he's reluctant to plead to quantity. He's reluctant to admit it. And the judge asks his lawyer, she says, well, you know, do you want to confer with your client? And he says, well, I've conferred with him many, many, many times, and it's not going to change anything. The second point I wanted to make is the government talked about Vaughan and said, well, Vaughan proves that this isn't plain error. Well, actually, the discussion in Vaughan supports the conclusion this isn't plain error, because Vaughan talked about the defendants. First of all, there was an eight-month delay in Vaughan, and Vaughan talked about how you want to encourage somebody to file a motion to withdraw a guilty plea. And here, of course, he did move to withdraw his guilty plea in Vaughan. That didn't happen. So actually, so I think that's really those were really the points I wanted to make. If there's no further questions, I'm willing to submit.
judges: Pregerson, Trott, Paez